FILED
11/26/2018
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 19, 2018 Session

## IN RE SAVANNA I.

### Appeal from the Juvenile Court for Knox County
No. 100825    Timothy E. Irwin, Judge

_____

### No. E2018-00392-COA-R3-PT
_____

This is a termination of parental rights case involving the parental rights of the mother, Melody I. ("Mother"), to her minor child, Savanna I. ("the Child"), who was eight months old at the time of trial. Shortly after the Child's birth, the Knox County Juvenile Court ("trial court") entered an order removing the Child from Mother's custody and placing the Child into the temporary legal custody of the Tennessee Department of Children's Services ("DCS"). The Child was immediately placed in foster care, where she remained at the time of trial. The trial court subsequently entered an order on November 28, 2017, finding that the Child was dependent and neglected due in part to Mother's prenatal drug use, incarceration, and severe abuse of the Child. The trial court relieved DCS from making reasonable efforts to reunite Mother with the Child. Also on November 28, 2017, DCS filed a petition to terminate the parental rights of Mother.[1] Following a bench trial, the trial court terminated Mother's parental rights to the Child upon determining by clear and convincing evidence that (1) Mother had severely abused the Child, (2) Mother had abandoned the Child by engaging in conduct prior to her incarceration that exhibited wanton disregard for the Child's welfare, and (3) Mother had failed to manifest an ability and willingness to personally assume custody of or financial responsibility for the Child. The trial court further found by clear and convincing evidence that termination of Mother's parental rights was in the best interest of the Child. Mother has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

---

[1] DCS also sought termination of the father's parental rights to the Child through a separate proceeding. Because the father is not a participant in this appeal, we will confine our analysis to those facts relevant to Mother.

Ben H. Houston, II, Knoxville, Tennessee, for the appellant, Melody I.

Herbert H. Slatery, III, Attorney General and Reporter, and Erin A. Shackelford, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I.  Factual and Procedural Background

The Child was born in May 2017.  When Mother arrived at the hospital to give birth, the hospital staff administered a drug test to Mother, which demonstrated that Mother had amphetamines, cocaine, oxycodone, and opiates in her system.  Following her birth, the Child's urine drug screen tested positive for amphetamines, opiates, and oxycodone.  A tissue sample from the Child's umbilical cord tested positive for amphetamines, methamphetamine, cocaine, and "opiates/morphine/codeine."  Shortly after her birth, the Child began experiencing withdrawal symptoms, including vomiting; fever; moderate to severe tremors; increased respiratory rate; uncoordinated sucking; and excessive, high-pitched crying.  The Child was then transferred to the Neonatal Intensive Care Unit ("NICU") at East Tennessee Children's Hospital, where she remained for approximately three weeks.  While hospitalized, the Child was diagnosed with Neonatal Abstinence Syndrome, Intrauterine Cocaine Exposure, and Maternal Substance Abuse.  She was also identified as "At Risk for Developmental Delay."  The Child was treated with morphine for twenty days and with clonidine for nineteen days to address her withdrawal symptoms.  While the Child remained hospitalized, Mother was arrested for shoplifting on May 26, 2017.

DCS filed a "Petition for Adjudication of Dependency & Neglect, for *Ex Parte* Protective Custody Order, and for Temporary Legal Custody" on June 8, 2017.  The trial court subsequently placed the Child into DCS custody on June 8, 2017, pending further hearing.  The trial court conducted an adjudicatory hearing and severe abuse hearing on October 10, 2017, and entered an order on November 28, 2017, finding that the Child was dependent and neglected due to Mother's substance abuse, incarceration, and resulting inability to provide for the Child's proper care and supervision.  The trial court also determined that Mother had severely abused the Child due to Mother's prenatal use of heroin, methamphetamine, and cocaine.  The court further found that Mother had knowledge that her use of illegal substances during her pregnancy could cause harm to the Child and that the Child had been harmed by Mother's prenatal drug use because the Child had suffered withdrawal symptoms.  Additionally, the court found that Mother

resumed her daily use of heroin after her release from the hospital following the Child's birth. The court ordered that the Child would remain in the temporary custody of DCS.[2]

On November 28, 2017, DCS filed a petition to terminate Mother's parental rights to the Child, alleging that Mother had severely abused the Child, had abandoned the Child by exhibiting wanton disregard for her welfare prior to Mother's incarceration, and had failed to manifest an ability and willingness to assume custody of or financial responsibility for the Child. DCS further averred that termination of Mother's parental rights was in the best interest of the Child. Mother was incarcerated when the termination petition was filed and remained incarcerated on the date of trial.

On December 12, 2017, a summons in this matter was hand-delivered to Mother while she was incarcerated in Loudon County. The summons directed Mother to file an answer within thirty days of receipt and informed Mother that if she failed to do so, a default judgment could be taken against her and her parental rights to the Child terminated. A "Notice to Incarcerated Parent" was concomitantly served upon Mother, which read as follows:

> Pursuant to T.C.A. § 36-1-113(f), you are hereby notified that a hearing on the attached petition will be held before the Knox County Juvenile Court at 3323 Division Street in Knoxville, Tennessee. The purpose of this hearing will be to determine whether or not your parental rights to the children, Savanna [I.], should be terminated and the children freed for adoption.
>
> You have the right to participate in the hearing and to contest the allegation that your rights should be terminated. Your participation may be achieved through personal appearance, teleconference, telecommunication, or other means deemed to be appropriate by the Court under the circumstances.
>
> If you wish to participate in the hearing, you shall have the right to present your testimony or that of any witnesses by means of deposition or interrogatories as provided by the Tennessee Rules of Civil Procedure.
>
> If you are indigent, the Court will appoint an attorney to represent you.
>
> **YOU MUST NOTIFY THE COURT IMMEDIATELY IF YOU WISH TO PARTICIPATE OR TO CONTEST THIS PETITION**.
>
> You may respond by writing to the Court at the address shown above or by telephoning **Stacy Turpin at the Knox County Juvenile Court Family**

---

[2] We find no indication in the record that the November 28, 2017 order was appealed by any party.

**Services Unit at (865) 215-6437**.  If you take no action after receiving this notice, a Default Judgment may be taken against you and the Court may proceed with the termination without your participation.

Alongside the summons and notice to incarcerated parent, DCS hand-delivered to Mother a "Motion for Default and/or Scheduling Conference and Notice," which provided, *inter alia*, as follows:

> The State of Tennessee, Department of Children's Services, moves this Honorable Court to default [Mother] if she does not plead or otherwise defend the **Petition to Terminate Parental Rights** within the time allowed by law, in accordance with Tennessee Rule of Civil Procedure 55.01.  In support thereof, [DCS] will show at the time of hearing that [Mother] will have been properly and personally served, will have failed to plead or otherwise defend, and is a competent adult.  Upon granting the Motion for Default Judgment, [DCS] will further move for an immediate uncontested hearing and termination of [Mother's] parental rights[.]
>
> * * *
>
> **NOTICE**
>
> This motion will be heard on **February 6, 2018, at 9:00 AM** at the Knox County Juvenile Court, 3323 Division Street, Knoxville, Tennessee. Be present if you wish to be heard.

DCS's motion for default judgment was filed with the trial court on December 21, 2017.

Mother was not present at the scheduled hearing on February 6, 2018.  The trial court heard testimony from Stacy Turpin, an employee of the Knox County Juvenile Court; Courtney Hamilton, DCS case manager; and the Child's foster mother ("Foster Mother").  Regarding the default judgment, Ms. Turpin testified that she was the employee with the Knox County Juvenile Court who had been identified as a contact person for incarcerated parents wishing to participate in termination proceedings.  She testified that she had not heard from Mother since Mother had been served with the summons and petition in this matter.  Following Ms. Turpin's testimony, the trial court granted DCS's motion for default judgment.  The trial court further ordered that "this cause be taken as confessed by [Mother] and further hearing set <u>ex</u> <u>parte</u>."  On the same day, the trial court proceeded to hear proof regarding the termination petition in Mother's absence.  DCS entered as an exhibit the adjudicatory and severe child abuse order, which included a finding that Mother had severely abused the Child due to her prenatal drug use.

- 4 -

Ms. Hamilton subsequently testified that she had remained the Child's case manager the entire time the Child had been in DCS custody. According to Ms. Hamilton, Mother was arrested on May 26, 2017, for shoplifting and had outstanding warrants for her arrest from Loudon County. Ms. Hamilton related that Mother had been incarcerated continuously throughout the case. Ms. Hamilton further testified that the Child was "doing fantastic" in her current foster placement. The Child's Tennessee Early Intervention System (TEIS) evaluation determined that the Child did not require a need for services, but she continued to be monitored by the East Tennessee Children's Hospital "Grow With Me" clinic. The Child also attended the "GI 4 Kids" program due to ongoing reflux issues. According to Ms. Hamilton, the Child was developing well.

Foster Mother testified during trial that the Child had been residing in her home since the Child's release from the hospital in June 2017. Foster Mother explained that her husband, two biological sons, and two other foster children also resided in the foster home. According to Foster Mother, the two older children in the home loved the younger children and behaved very well with them. When the Child came to live with Foster Mother and her family, the Child experienced a few tremors and trouble sleeping. Foster Mother further explained that the Child had always suffered from reflux and had an allergy to milk. According to Foster Mother, the Child was meeting her developmental milestones. She reported that the Child had been crawling and would chase Foster Mother around the home. She also indicated that the Child pulled up on her crib for the first time the night before trial. Moreover, Foster Mother stated that she wished to adopt the Child.

Following the termination trial, the trial court found by clear and convincing evidence that Mother had committed severe abuse against the Child due to her prenatal drug use as previously found in the November 28, 2017 order. The trial court further determined by clear and convincing evidence, based on Mother's prenatal drug use and Mother's act of shoplifting while the Child was suffering from withdrawal symptoms in the NICU, that Mother's conduct prior to her incarceration had exhibited a wanton disregard for the welfare of the Child. Additionally, the trial court found by clear and convincing evidence that Mother had failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child and that placing the Child in Mother's custody would pose a risk of substantial harm to the physical or psychological welfare of the Child. The trial court further determined that termination of Mother's parental rights was in the best interest of the Child. Mother timely appealed.

Following entry of the judgment, a letter written by Mother to her trial counsel was filed by Mother in the trial court record. In the letter, Mother states: "On December 12, 2017 I was served with the 'Notice to Incarcerated Parent' and the 'Summons' &

'Motion for Default and/or Scheduling Conference & Notice' relative to the termination of my parental rights to [the Child]." Mother also claimed in the correspondence filed with the court that she had mailed letters to her court-appointed counsel but that the letters were returned to her.

## II. Issues Presented

Mother raises eight issues for our review, which we have restated slightly:

1. Whether Mother was provided with sufficient notice, pursuant to Tennessee Code Annotated § 36-1-113(f)(1), of the hearing on DCS's motion for default judgment in the proceedings to terminate Mother's parental rights.

2. Whether the trial court erred by granting DCS's motion for default judgment when it was undisputedly prematurely filed.

3. Whether the trial court deprived Mother of her constitutional right to due process under both the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution.

4. Whether the trial court's judgment should be set aside, pursuant to Tennessee Rule of Civil Procedure 59.04 or 60.02, based on Mother's mistake, inadvertence, or excusable neglect.

5. Whether the trial court erred in finding by clear and convincing evidence that Mother had severely abused the Child.

6. Whether the trial court erred by finding clear and convincing evidence of the statutory ground of Mother's abandonment of the Child through conduct exhibiting wanton disregard for the Child's welfare prior to Mother's incarceration.

7. Whether the trial court erred by finding clear and convincing evidence of the statutory ground of Mother's failure to manifest an ability and willingness to personally assume custody or financial responsibility for the Child.

8. Whether the trial court erred by finding clear and convincing evidence that termination of Mother's parental rights was in the best interest of the Child.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decison terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief

or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

\* \* \*

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

## IV. Default Judgment

### A. Notice of Default Judgment Hearing

Mother initially argued on appeal that the record lacked evidence that she had been provided proper notice of DCS's motion for default judgment filed with the trial court. However, Mother conceded in her reply brief that the motion for default judgment was listed on the summons return as having been personally delivered to Mother. Therefore, Mother stated in her reply brief and her counsel acknowledged during oral argument that Mother would not be pursuing this argument on appeal.

### B. Motion for Default Judgment

Mother also argues that the trial court's judgment was void because DCS prematurely filed its motion for default judgment. We disagree with Mother's contention. Tennessee Rule of Civil Procedure 55.01 provides in relevant part:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact

is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default shall apply to the court. Except for cases where service was properly made by publication, all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action. . . .

In this case, DCS filed its petition to terminate Mother's parental rights on November 28, 2017. Mother was subsequently served with process on December 12, 2017, and DCS filed its motion for default judgment against Mother on December 21, only nine days after service upon Mother. The record reflects that the motion for default judgment was personally served upon Mother together with the petition to terminate her parental rights on December 12, 2017. The trial court granted DCS's motion for default judgment during a hearing on February 6, 2018, nearly two months following service of process upon Mother.

Although DCS filed its motion for default judgment against Mother before her answer was due, the hearing on such motion did not occur until after the expiration of Mother's time to respond to the petition. Regarding this issue, this Court has previously explained:

While it is undisputed that the motion for default judgment was filed before the answer was due, we find no prohibition to that practice. . . .

Rule 55.01 T.R.C.P. contains no prohibition against the premature filing of a motion for default judgment so long as the order on default judgment is not entered until after the time the defendant has had to respond.

*Boatmen's Bank of Tenn. v. Dunlap*, No. 02A01-9607-CH-00166, 1997 WL 793507, at *9 (Tenn. Ct. App. Dec. 30, 1997). Because Mother was provided sufficient time to respond to the petition prior to entry of the order granting default judgment, we determine that Mother is not entitled to relief on this issue.

V. Due Process

Mother contends that her constitutional right to due process was violated, pursuant to the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution. Mother argues that she was not provided with fundamentally

fair procedures, specifically the right to have counsel appointed to represent her in the termination proceedings and court-ordered transportation from jail to court for the hearing. Upon careful review, we determine that Mother's due process rights were not violated in the case at bar.

"Due process unquestionably requires States to provide parents with fundamentally fair procedures, but it does not require States to ignore the other interests at stake in parental termination proceedings." *In re Carrington H.*, 483 S.W.3d at 533. In *Carrington H.*, our Supreme Court explained that "Tennessee court rules, statutes, and decisional law are already replete with procedures . . . designed to ensure that parents receive fundamentally fair parental termination proceedings." *Id.* In all parental termination proceedings, Tennessee provides a statutory right for indigent parents to receive appointed counsel. *Id.* at 527-28 (citing Tenn. Code Ann. § 37-1-126(a)(2)(B)(ii) (2014); Tenn. Sup. Ct. R. 13, § 1(c), (d)(2)(B); Tenn. R. Juv. P. 39(e)(2)).[3] Tennessee Supreme Court Rule 13, § 1(d)(2) requires that the trial court advise any parent without counsel in a proceeding to terminate parental rights his or her right to have an attorney represent him or her throughout the proceedings and further provides that counsel will be appointed if the parent is indigent and requests appointment of counsel.

Additionally, Tennessee Code Annotated § 36-1-113(f) requires the petitioner in a proceeding to terminate parental rights to provide specific notice to incarcerated parents as follows:

> (f)  Before terminating the rights of any parent or guardian who is incarcerated or who was incarcerated at the time of an action or proceeding is initiated, it must be affirmatively shown to the court that such incarcerated parent or guardian received actual notice of the following:
>
> > (1)  The time and place of the hearing to terminate parental rights;
> >
> > (2)  That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;
> >
> > (3)  That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be

---

[3] We note that on July 1, 2016, the Tennessee Rules of Juvenile Procedure were completely revised and renumbered such that Tennessee Rule of Juvenile Procedure 39 is no longer in existence. Tennessee Code Annotated § 37-1-126(a)(2)(B)(ii) and Tennessee Supreme Court Rule 13, § 1(c) and (d)(2) remain in full force and effect.

terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;

(4)  That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:

(A)  If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation; and

(B)  Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure; and

(5)  If, by means of a signed waiver, the court determines that the incarcerated parent or guardian has voluntarily waived the right to participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court may proceed with such action without the parent's or guardian's participation.

In arguing that her due process rights were violated, Mother asserts that she was operating under the mistaken assumption that her court-appointed attorney during the dependency and neglect proceedings would also be representing her in the subsequent action to terminate her parental rights. Mother also argues that she believed she would be transported from the jail to the trial court for the termination hearing without her requesting the court to do so. According to Mother, "the procedure utilized by the [trial court] led [Mother] to believe that she was represented by an attorney even though she wasn't." Mother argues that her "confusion could have been avoided by the [trial court] either [by] appointing an attorney to represent Mother in the termination of parental rights proceeding or by simply transporting the Mother as it had done in the majority of the underlying dependenc[y] and neglect proceedings."

We note that Mother did not raise a due process argument below in a manner that would have allowed the trial court to address it. The only mention of this issue was contained in a letter written by Mother, which she filed with the trial court concomitant with her notice of appeal. The letter, which was directed to her attorney in the dependency and neglect proceedings and dated February 16, 2018, included a copy of

- 11 -

Mother's "Inmate Mail History" from the Loudon County Sheriff's Department, which spanned June 9, 2017, through February 20, 2018. In the letter, Mother acknowledged having been served with a "Summons," a "Notice to Incarcerated Parent," and a "Motion for Default and/or Scheduling Conference & Notice" on December 12, 2017. The inmate history reflects outgoing mail from Mother to her attorney in the dependency and neglect proceedings on five separate occasions during the pendency of the termination proceedings. The contents of the letters are not contained within the record, and Mother claimed in her February 2018 letter that each of the letters was returned to her.

At the beginning of the dependency and neglect proceedings, the trial court entered an appointment of counsel order, determining Mother to be indigent and appointing an attorney to represent her. The appointment order consisted of a form allowing the trial court to mark boxes identifying for which stages of the proceedings the attorney was appointed. In its appointment order, entered June 12, 2017, the trial court specified that Mother's appointed attorney was to represent her "[f]rom the filing of the dependency petition through disposition" and "[i]n post disposition, foster care review and permanency proceedings." However, the trial court did not check the box that would have appointed Mother's attorney throughout any subsequent proceedings to terminate parental rights. We note that at the time the trial court appointed counsel for Mother, the petition to terminate her parental rights had not been filed.

Approximately six months later, DCS filed its petition to terminate Mother's parental rights to the Child. The proceedings to terminate parental rights was not a continuation of the dependency and neglect proceedings. *In re Carrington H.*, 483 S.W.3d at 536 ("Dependency and neglect proceedings are separate and distinct from proceedings to terminate parental rights."); *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 1, 2004) ("A termination of parental rights proceeding is not simply a continuation of a dependent-neglect proceeding. It is a new and separate proceeding involving different goals and remedies, different evidentiary standards, and different avenues for appeal.").

In this case, we conclude that Mother received proper notice of the proceedings to terminate her parental rights. On December 12, 2017, Mother was served with a summons, a copy of the termination petition, a "Notice to Incarcerated Parent" in compliance with Tennessee Code Annotated § 36-1-113(f), and a copy of DCS's motion seeking a default judgment against Mother, which provided Mother with notice of the scheduled hearing date. The summons informed Mother that she should file a written answer with the trial court within thirty days of receiving the summons and that if she failed to file an answer, a default judgment would be taken against her and her parental rights could be terminated.

Additionally, the "Notice to Incarcerated Parent" notified Mother of her right to participate in the termination proceedings and to contest the allegations DCS had made against her in the petition. The notice informed Mother that if she were indigent, an attorney would be appointed to represent her in the proceedings. The notice further provided in bold font and all-capital letters as follows: "**YOU MUST NOTIFY THE COURT IMMEDIATELY IF YOU WISH TO PARTICIPATE OR TO CONTEST THIS PETITION.**" The notice further instructed Mother regarding how to notify the trial court of her desire to participate in the termination proceedings. Mother was afforded the option of either writing a letter to the trial court and mailing it to the address specified in the notice or contacting a designated court staff member by using the telephone number provided in the notice. The notice again notified Mother that if she took no action after receiving the notice, the trial court could proceed with the termination action without her participation.

Pursuant to Tennessee Code Annotated § 36-1-113(f)(3), an incarcerated parent "has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent . . . should be terminated." DCS's "Notice to Incarcerated Parent" and motion for default judgment, which were served upon Mother, complied with the requirements of Tennessee Code Annotated § 36-1-113(f). The motion included the time and place that the hearing would occur. *See* Tenn. Code Ann. § 36-1-113(f)(1). The "Notice to Incarcerated Parent" informed Mother that the purpose of the hearing before the trial court was to determine whether her parental rights were to be terminated. *See* Tenn. Code Ann. § 36-1-113(f)(2). The notice also informed Mother of her right to participate in the proceedings and contest the allegations against her, as well as instructing Mother in how to notify the trial court if she wished to participate. *See* Tenn. Code Ann. § 36-1-113(f)(3). Additionally, the notice provided that if Mother were indigent, the trial court would appoint an attorney to represent her. *See* Tenn. Code Ann. § 36-1-113(f)(4)(A). Also, the notice explained that Mother would have the right to present her testimony or the testimony of other witnesses by means of deposition or interrogatories in accordance with the Tennessee Rules of Civil Procedure. *See* Tenn. Code Ann. § 36-1-113(f)(4)(B).

Tennessee Code Annotated § 36-1-113(f)(5) states that if an incarcerated parent is provided with statutory notice of his or her rights under that section and the parent proceeds to take no action following receipt of the notice, the trial court may proceed with the termination action without that parent's participation. Mother does not dispute that upon receipt of the "Notice to Incarcerated Parent," she did not contact the trial court, as the notice directed, to notify the court that she wished to participate in the proceedings. Mother also did not request the trial court to appoint an attorney to represent her. Instead, according to Mother, she had mailed letters to her former attorney that had all been returned to her. Despite her receipt of the returned letters, Mother took no further action. Because Mother never initiated steps to contact the trial court to notify

it of her desire to participate in the termination hearing, the trial court was authorized to proceed with the hearing without Mother's participation, pursuant to Tennessee Code Annotated § 36-1-113(f)(5). As such, the trial court did not err by proceeding with the hearing in Mother's absence. *See* Tenn. Code Ann. § 36-1-113(f)(5).

Mother further argues that the trial court should have appointed an attorney to represent her throughout the termination proceedings. Because termination of parental rights is a separate action, the appointment of Mother's attorney with respect to the dependency and neglect proceedings would not continue through the termination proceedings. *See In re Carrington H.*, 483 S.W.3d at 536. Pursuant to Tennessee Supreme Court Rule 13 § 1(d)(2), in termination of parental rights proceedings, "counsel will be appointed if the party is indigent and . . . requests appointment of counsel (emphasis added)." As the rule provides, Mother must request that an attorney be appointed to represent her in order for the trial court to appoint counsel in the termination proceedings. *See* Tenn. Sup. Ct. R. 13 § 1(d)(2). Because Mother did not notify the court that she desired to participate in the hearing and never requested that the trial court appoint her an attorney in the proceedings to terminate her parental rights, we conclude that the trial court did not err in failing to appoint counsel for Mother. *See* Tenn. Sup. Ct. R. 13 § 1(d)(2); *In re Yariel S.*, No. E2016-00937-COA-R3-PT, 2017 WL 65469, at *5 (Tenn. Ct. App. Jan. 6, 2017) ("[The parent] failed to appear at the hearing and never requested the appointment of counsel. Accordingly, we conclude that the court did not err in failing to appoint counsel for [the parent].").

Mother also asserts that the trial court should have transported her from jail to court for the termination hearing despite her failure to request transport or notify the court that she wished to participate in the hearing. When an incarcerated parent's fundamental parental rights are at stake, "due process requires the trial court to provide the prisoner defendant with *meaningful* access to the court and an opportunity to be heard." *In re Perry*, No. W2000-00209-COA-R3-CV, 2001 WL 277988, at *5 (Tenn. Ct. App. Mar. 12, 2001). An incarcerated parent's right to participate does not necessarily require physical presence in the courtroom during the termination proceedings. *See id.* Tennessee Code Annotated § 36-1-113(f)(3) specifically provides that "at the discretion of the court, [the incarcerated parent's] participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances."

We therefore determine that the trial court did not err by failing to transport Mother for the hearing regarding termination of her parental rights when she had failed to notify the court of her desire to participate in the proceedings. Having previously determined that the trial court did not err by failing to appoint an attorney to represent Mother during the termination proceedings, we conclude that Mother was provided with

fundamentally fair procedures and has not demonstrated a violation of her due process rights.

## VI. Tennessee Rules of Civil Procedure 59 and 60

Mother contends that the trial court's judgment should be set aside, pursuant to Tennessee Rules of Civil Procedure 59 or 60, specifically arguing that Mother's failure to appear was due to her mistake, inadvertence, and excusable neglect. However, a review of the record reflects that Mother never filed a motion with the trial court in the proceedings below requesting relief pursuant to either Rule 59 or Rule 60. Therefore, this issue is not properly before this Court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts[.]"); *Guess v. Maury*, 726 S.W.2d 906, 922 (Tenn. Ct. App. 1986), *overruled on other grounds by Elliott v. Cobb*, 320 S.W.3d 246 (Tenn. 2010) ("[The appellants] seek relief in this Court under Rule 60, T.R.C.P. This argument is raised for the first time on appeal and therefore cannot and will not be considered by this Court. . . . In short, [the appellants] failed to utilize the procedural opportunities afforded them."). Mother is not entitled to relief on this issue.

## VII. Statutory Grounds for Termination of Mother's Parental Rights

Tennessee Code Annotated § 36-1-113 (2017) lists the statutory requirements for termination of parental rights, providing in relevant part:

(a)     The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

\* \* \*

(c)     Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court determined that the evidence clearly and convincingly supported a finding of three statutory grounds to terminate Mother's parental rights: (1) severe child abuse, (2) abandonment by conduct exhibiting wanton disregard for the Child's welfare prior to Mother's incarceration, and (3) failure to manifest an ability and willingness to assume custody of or financial responsibility for the Child. We will address each statutory ground in turn.

## A. Severe Child Abuse

The trial court found that Mother had severely abused the Child. Mother contends that the trial court erred by determining that clear and convincing evidence existed to terminate her rights on this ground. Specifically, Mother argues that because the trial court relied solely on a prior court order and no additional evidence was presented during the termination trial to support a finding of severe child abuse against Mother, the record contains insufficient evidence to support the trial court's finding of severe abuse. We disagree.

A court may terminate the parental rights of a parent if he or she has committed severe child abuse against the child at issue or a half-sibling of such child. *See* Tenn. Code Ann. § 36-1-113(g)(4) (2017).[4] Tennessee Code Annotated § 36-1-113(g)(4), as relevant to this action, provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

> \* \* \*

---

[4] Effective July 1, 2018, the General Assembly has amended Tennessee Code Annotated § 36-1-113(g)(4), replacing the former language in its entirety with the following:

> The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

*See* 2018 Tenn. Pub. Acts, Ch. 875, § 11 (H.B. 1856). The amendment essentially eliminates the requirement that the victim of severe abuse be the child at issue or a half-sibling of the child at issue. *See id.* Inasmuch as the instant action was filed in November 2017, we will confine our analysis in this Opinion to the version of Tennessee Code Annotated § 36-1-113 in effect at that time.

(4)     The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian . . . .

Tennessee Code Annotated § 37-1-102(b)(22) (2017) defines "severe child abuse," in relevant part, as:

(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death . . . .

As this Court has previously explained:

[A] parent's conduct is "knowing, and a parent acts or fails to act 'knowingly,' when . . . she has actual knowledge of the relevant facts and circumstances or when . . . she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to . . . her."

*In re H.L.F.*, 297 S.W.3d 223, 236 (Tenn. Ct. App. 2009) (quoting *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *7 (Tenn. Ct. App. July 13, 2004)).

"Serious bodily injury" is defined in Tennessee Code Annotated § 39-15-402(d) (2017) as follows:

"Serious bodily injury to the child" includes, <u>but is not limited to</u>, second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects.

(Emphasis added.)  "The most serious consequence of a finding that a parent has committed severe child abuse is that such a finding, in and of itself, constitutes a ground

for termination of parental rights." *In re Samaria S.*, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011).

Following a hearing during the dependency and neglect proceedings on October 10, 2017, the trial court entered an order on November 28, 2017, citing the definition of severe child abuse within Tennessee Code Annotated § 37-1-102(b)(22)(A) and determining by clear and convincing evidence that Mother had severely abused the Child due to Mother's use of illegal substances during her pregnancy. Specifically, the trial court found that Mother had used heroin, methamphetamine, and cocaine during her pregnancy with the Child.

According to the trial court, Mother had confirmed her pregnancy on November 7, 2016, and was counseled by hospital personnel on the "risks of drug use during pregnancy, including the risks of neonatal abstinence syndrome." Mother was treated in May 2017 while pregnant and reported to hospital personnel that she had not received any prenatal care during her pregnancy. At that time, Mother was administered a urine drug screen and tested positive for cocaine, amphetamines, opiates, and oxycodone. Hospital personnel urged Mother to consult an obstetrician, provided her information to assist in doing so, and again counselled her regarding the risks her prenatal drug use could have to the baby, "including the fact that her infant would likely experience withdrawal symptoms and would possibly need Neonatal Intensive Care following birth." The following day, Mother was admitted to a different hospital to give birth.

Upon admission, Mother acknowledged to hospital personnel that she had been using illicit drugs, including daily use of heroin. Mother was administered a urine drug screen and tested positive for amphetamines, cocaine, oxycodone, and opiates. The trial court found that at the hospital, Mother "falsely claimed to medical staff that she had not found out she was pregnant until January 2017." A tissue sample from the umbilical cord was analyzed at the hospital and tested positive for amphetamine, methamphetamine, cocaine, and "opiates/morphine/codeine."

As a consequence of Mother's prenatal drug use, the Child suffered withdrawal symptoms shortly after her birth and was diagnosed with Neonatal Abstinence Syndrome, Intrauterine Cocaine Exposure, and Maternal Substance Abuse, as well as being identified as "At Risk for Developmental Delay." The Child experienced vomiting; fever; moderate to severe tremors; increased respiratory rate; uncoordinated sucking; and excessive, high-pitched crying. The Child's Finnegan Scale Score, assessing signs of Neonatal Abstinence Syndrome, increased significantly, and the Child was transferred to the NICU at East Tennessee Children's Hospital, where she was given morphine and clonidine to manage her symptoms for twenty and nineteen days respectively.

Based on those facts, the trial court entered an order finding by clear and convincing evidence that Mother had severely abused the Child. Mother does not contest that the trial court's November 28, 2017 order in the dependency and neglect proceedings was a final order, and no evidence was presented to suggest that the order was not final. Instead, Mother argues that the severe child abuse finding in the dependency and neglect proceedings is not sufficient for *res judicata* purposes because the actions are not "the same type of claim or cause of action." We do not consider Mother's argument to be persuasive.

Tennessee Code Annotated § 36-1-113(g)(4) allows a trial court to terminate a parent's rights on the ground of severe abuse if the parent "has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court (emphasis added)." It is well settled that a trial court may rely on a prior court order finding severe child abuse and is not required to re-litigate the issue of severe abuse at the trial to terminate parental rights. *See In re Samaria S.*, 347 S.W.3d at 201*; State, Dep't of Children's Servs. v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar. 8, 2005). In the case at bar, the trial court properly relied on the November 28, 2017 order in finding that DCS had proven the ground of severe child abuse against Mother by clear and convincing evidence. We therefore affirm the trial court's determination that this statutory ground for termination was proven by clear and convincing evidence.

## B. Abandonment Through Wanton Disregard

The trial court also determined that Mother had abandoned the Child by exhibiting wanton disregard for the Child's welfare prior to Mother's incarceration. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2017). Tennessee Code Annotated § 36-1-113(g)(1) (2017) provides as a ground for termination:

> (1)    Abandonment by the parent or guardian, as defined in § 36-1- 102, has occurred[.]

Tennessee Code Annotated § 36-1-102(1)(A)(iv) provides in pertinent part:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. . . .

(Emphasis added.)

A parent's actions constituting wanton disregard for the welfare of a child are not restricted to only the four-month period prior to incarceration. *See In re Audrey S.*, 182 S.W.3d at 871. This Court has consistently held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68; *see also In re K.F.R.T.*, 493 S.W.3d 55, 59-60 (Tenn. Ct. App. Mar. 10, 2016), *perm. app. denied* (Tenn. June 6, 2016) (citing *In re Audrey S.* with approval and noting that "wanton disregard can be based upon bad conduct that occurs at any time prior to incarceration"). "Simply stated, a parent's 'poor judgment and bad acts that affect the children constitute a wanton disregard for the welfare of the children.'" *In re T.L.G.*, No. E2014-01752-COA-R3-PT, 2015 WL 3380896, at *3 (Tenn. Ct. App. May 26, 2015) (quoting *State, Dep't of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009)).

We note that a parent's conduct prior to the Child's birth can constitute wanton disregard for the Child's welfare so long as that parent was aware of the Child's existence *in utero*. *See In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015) ("[W]hile the statutory reference to 'the child' can mean a child *in utero*, the wanton disregard language of Tenn. Code Ann. § 36-1-102(1)(A)(iv) must be construed to require that the [parent] has knowledge of the child at the time his actions constituting wanton disregard are taken."). This Court has previously affirmed the termination of a parent's rights on the statutory ground of wanton disregard based upon a mother's prenatal drug use. *See In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004) ("It is clear that [the mother] ingested crack cocaine during her pregnancy and immediately before the birth of [the child], knowing the effects it would have on her child. . . . Such conduct clearly exhibits a wanton disregard for the welfare of the child.").

In the instant action, the trial court found by clear and convincing evidence that Mother's actions prior to her incarceration had exhibited wanton disregard for the Child's welfare. The trial court specifically found the following facts regarding this statutory ground: "[Mother's] baby is in the NICU suffering withdrawals and [Mother] was out shoplifting, knowing she had outstanding warrants that would certainly result in her incarceration!" The evidence adduced at trial supports this finding.

Not only did Mother use illegal drugs at a time when she knew she was pregnant with the Child, the trial court found that Mother was arrested for the criminal offense of shoplifting while the Child was in the hospital. We conclude that the evidence regarding Mother's behavior prior to her incarceration, including her prenatal use of illegal drugs while aware that she was pregnant and her criminal activity, supports the trial court's determination that the statutory ground of abandonment through wanton disregard was

- 20 -

proven by clear and convincing evidence. We affirm the trial court's reliance on this statutory ground for termination.

### C. Failure to Manifest an Ability and Willingness to Assume Custody or Financial Responsibility of the Child

Mother asserts that DCS failed to present clear and convincing evidence to support termination of her parental rights pursuant to Tennessee Code Annotated § 36-1-113(g)(14) (2017). This subsection, which was added to the statutory framework effective July 1, 2016, *see* 2016 Tenn. Pub. Acts, Ch. 919 § 20 (S.B. 1393), provides as an additional ground for termination: [5]

> A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Upon our careful review of the record, we determine that the trial court did not err in finding that clear and convincing evidence existed to support this statutory ground for termination of Mother's parental rights.

This Court has recently explained the following with regard to this ground for termination of parental rights:

> Essentially, this ground requires DCS to prove two elements by clear and convincing evidence. First, DCS must prove that [the parent] failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). DCS must then prove that placing the children in [the parent's] "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." *Id.*
>
> * * *
>
> We have made the following observations about what constitutes "substantial harm":

---

[5] Effective July 1, 2018, Tennessee Code Annotated § 36-1-113(g)(14) has been amended to substitute the phrase, "A parent," in place of "A legal parent." *See* 2018 Tenn. Pub. Acts, Ch. 875, § 12 (H.B. 1856).

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted).

*In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7-8 (Tenn. Ct. App. Apr. 4, 2018) (additional internal citations omitted). This Court has held that the first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires that the petitioner prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child. *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *14 (Tenn. Ct. App. June 20, 2018); *but see In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018) (reversing this ground for termination when parents were unable but willing to assume custody and financial responsibility of their children).

Regarding the first prong in the instant action, the trial court found that DCS had proven by clear and convincing evidence that Mother had not manifested an ability and willingness to personally assume legal and physical custody of the Child or financial responsibility for the Child. Mother was incarcerated throughout the entire proceedings to determine dependency and neglect and to terminate her parental rights. Clearly, Mother was unable to assume physical or legal custody of or financial responsibility for the Child based on her incarceration.

Regarding willingness, a parent's actions can demonstrate a lack of willingness to assume custody of or financial responsibility for the Child. *See In re Keilyn O.*, No. M2017-02386-COA-R3-PT, 2018 WL 3208151, at *8 (Tenn. Ct. App. June 28, 2018); *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *15 (Tenn. Ct. App. June 20, 2018). In the instant action, Mother used illegal drugs during her pregnancy such that the Child was born addicted to drugs and suffered withdrawal symptoms following her birth. Shortly after the Child's birth and while the Child remained in the hospital, Mother incurred a criminal charge of shoplifting and was arrested on pending

warrants from Loudon County. Mother's actions during her pregnancy and following the Child's birth do not demonstrate willingness by Mother to assume custody of or financial responsibility for the Child. Therefore, we agree with the trial court's conclusion that Mother failed to manifest an ability and willingness to personally assume custody of or financial responsibility for the Child.

The second prong of this ground requires DCS to prove by clear and convincing evidence that placing the Child in Mother's legal and physical custody would pose a risk of substantial harm to the Child's physical and psychological welfare. In addition to Mother's prenatal drug use and her criminal activity, Mother has not maintained consistent contact with the Child due to her incarceration, and Mother does not have a relationship with the Child. Furthermore, since the Child was released from the hospital after her birth, she has remained in the same foster home, where she is thriving and her needs are being met. The foster parents are the only family the Child has ever known, and they wish to adopt the Child.

The trial court found that DCS had met its burden regarding this prong, and we agree. Upon a thorough review of the record, we further determine that the evidence does not preponderate against the trial court's finding that placing the Child into Mother's custody would pose a risk of substantial harm to the Child's physical and psychological welfare. Accordingly, we affirm the trial court's determination by clear and convincing evidence regarding this statutory ground for termination of Mother's parental rights.

VIII. Best Interest of the Child

Mother contends that DCS did not present sufficient evidence to support the trial court's finding by clear and convincing evidence that termination of her parental rights was in the best interest of the Child. We disagree.

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 ("'The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.'" (quoting *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010))). Tennessee Code Annotated § 36-1-113(i) (2017) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique

facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

As our Supreme Court recently explained regarding the best interest analysis:

"The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." In re Angela E., 303 S.W.3d [240,] 254 [(Tenn. 2010)].

When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d at 555 (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are

- 25 -

terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

In the case at bar, the trial court concluded that termination of Mother's parental rights was in the best interest of the Child. We agree with the trial court's determination. Considering the above-listed factors, the trial court found that although whether Mother had made any adjustment during her incarceration remained unknown, she had not made such an adjustment in her circumstances, conduct, or conditions so as to make it safe for the Child to return to her custody. As the trial court noted, Mother had been incarcerated during the entire time span that the Child had been in foster care. The trial court thereby found that Mother had not maintained regular visitation due to her own conduct and that no relationship had been established between Mother and the Child.

As the trial court also determined, Mother severely abused the Child by ingesting illegal drugs during her pregnancy while knowing that she was pregnant and that her prenatal drug use could cause harm to the Child. As a consequence of Mother's prenatal drug use, the Child experienced withdrawal symptoms and was diagnosed with Neonatal Abstinence Syndrome. The trial court found that upon the Child's arrival at the foster home, the Child had experienced tremors and had difficulty sleeping.

Additionally, the trial court determined that changing the Child's caretakers and removing her from the foster home, which was the only home she had ever known, was likely to have a detrimental effect on the Child's emotional, psychological, and medical condition. The Child had remained in the pre-adoptive foster home since she had been discharged from the hospital following her birth. Although generally healthy, the Child continued to be monitored by East Tennessee Children's Hospital through its "Grow With Me" program due to her diagnosis of Neonatal Abstinence Syndrome. The Child also participated in the "GI for Kids" program due to her reflux issues. Accordingly, the foster parents had taken the Child to all her appointments.

The trial court noted that Mother remained incarcerated and provided no healthy and safe physical environment for the Child to return to at that time. Additionally, the

trial court determined that Mother had engaged in both criminal activity and the use of alcohol or controlled substances that could render Mother consistently unable to care for the Child in a safe and stable manner. The trial court made no findings regarding Mother's mental or emotional status, pursuant to factor (8), or whether Mother had paid child support, pursuant to factor (9). *See* Tenn. Code Ann. § 36-1-113(i)(8), (9). Ultimately, the trial court concluded that termination of Mother's parental rights was in the best interest of the Child.

On appeal, Mother argues that the evidence before the trial court was insufficient because "there is no evidence in the record concerning how large the foster parents' home is and/or whether it is a large enough home to accommodate seven (7) people." Although the trial court made no findings of fact regarding the physical home where the foster family resided, the trial court stated during its oral ruling that the Child was "getting what she needs in a loving home with a bunch of other foster siblings." In its order, the trial court also found that the Child was entitled to have a safe, secure, and loving home, that she had been in her current foster home since she was released from the hospital, and that she had the opportunity to achieve permanency through adoption.

Foster Mother testified that she and her husband resided in the home with their two biological children, the Child, and two other foster children. According to Foster Mother, she had become a "stay-at-home mom" to care for the children in her home. Foster Mother explained that she was present with the three children all day and that they maintained a routine, which included certain times for various activities and a staggered nap schedule affording her individual time with each child. Foster Mother opined that the Child had been doing "very well" in meeting her developmental milestones, adding that Foster Mother and her husband were ready to adopt the Child.

Ms. Hamilton, the Child's DCS case manager, also testified that the foster parents had been "amazing" and had transported the Child to all of her appointments. According to Ms. Hamilton, the Child was "doing fantastic" in the foster home, was well-loved, and was developing well. Despite the trial court's lack of findings regarding the physical space where the foster family resided, the record indicates that the Child has remained in that home for the duration of her foster care and that the Child is thriving in that environment. We find Mother's argument in this regard to be unavailing.

Mother further argues that DCS had "made no efforts whatsoever to develop a plan to return this child to the Mother once she is released from jail" and that DCS made adoption its "sole objective" from the beginning of the case. We note that the trial court found in its best interest analysis that DCS had made reasonable efforts toward achieving permanency for the Child but not that DCS made reasonable efforts to assist Mother. Significantly, this is a case wherein Mother committed severe abuse against the Child due to Mother's prenatal drug use and the Child's subsequent diagnosis with Neonatal

Abstinence Syndrome. As a result of the trial court's finding of severe child abuse against Mother, the trial court during the dependency and neglect proceedings relieved DCS of making reasonable efforts to reunite the Child with Mother pursuant to Tennessee Code Annotated § 37-1-166(g)(4).

We emphasize that once statutory grounds for termination have been established, the focus in the best interest analysis must remain on the Children. *See In re Carrington H.*, 483 S.W.3d at 523. Although a lack of reasonable efforts in some cases may be determinative regarding the best interest analysis, *see In re Kaliyah S.*, 455 S.W.3d 533, 556 (Tenn. 2015), we determine that in this case, a lack of reasonable efforts by DCS to assist Mother with reunification did not preclude a finding that termination of her parental rights was in the Child's best interest. *See In re Marcell W.*, No. W2014-02004-COA-R3-PT, 2015 WL 4484303, at *6 (Tenn. Ct. App. July 23, 2015) (affirming the trial court's termination of the parent's rights after DCS had been relieved of making reasonable efforts due to aggravating circumstances). We determine Mother's argument in this regard to be misplaced. Upon consideration of all the factors contained in Tennessee Code Annotated § 36-1-113(i) and a thorough review of the record before us, we further determine that the evidence in the record is clear and convincing that termination of Mother's parental rights was in the best interest of the Child.

IX. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects, including the termination of Mother's parental rights to the Child. We remand this case to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Melody I.

_____
THOMAS R. FRIERSON, II, JUDGE